## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NATIONAL FAMILY PLANNING & REPRODUCTIVE HEALTH ASSOCIATION, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:25-cv-01265 (ACR) |
| ROBERT F. KENNEDY, JR., *et al*., | ) ) | |
| Defendants. | ) ) ) | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGEMENT ON ITS FIRST, SECOND, AND THIRD CAUSES OF ACTION

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................................. iii

INTRODUCTION ........................................................................................................................... 1

BACKGROUND:  THE TITLE X PROGRAM........................................................................... 2

LOCAL RULE 7(h)(2) STATEMENT OF UNDISPUTED FACTS ........................................... 4

LEGAL STANDARD..................................................................................................................... 7

ARGUMENT ................................................................................................................................. 8

    I.      Defendants' Withholding of Title X Funds Constitutes Final Agency Action for the
           Purposes of the APA. ......................................................................................................... 8

    II.     Defendants Have Violated Governing Statutes and Regulations................................. 10

        A.  Defendants Violated Their Own Regulations Related to Grant Awards. .............. 10

        B.  Defendants Violated the Statutory and Regulatory Requirements for Enforcing
             Title VI in HHS-Funded Programs. ..................................................................... 12

CONCLUSION............................................................................................................................. 16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Battle v. F.A.A.*,
  393 F.3d 1330 (D.C. Cir. 2005) ................................................................. 8

*\*Bennett v. Spear*,
  520 U.S. 154 (1997).......................................................................... 8, 9

*Beyond Nuclear v. U.S. Dep't of Energy*,
  233 F. Supp. 3d 40 (D.D.C. 2017) ............................................................ 7

*Ciba-Geigy Corp. v. U.S.E.P.A.*,
  801 F.2d 430 (D.C. Cir. 1986) ................................................................. 9

*CSI Aviation Servs., Inc. v. U.S. Dep't of Transp.*,
  637 F.3d 408 (D.C. Cir. 2011).............................................................. 10

*Grace v. Barr*,
  965 F.3d 883 (D.C. Cir. 2020) ................................................................. 7

*Grace v. Whitaker*,
  344 F. Supp. 3d 96 (D.D.C. 2018) ........................................................... 7

*\*Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*,
  763 F. Supp. 3d 36 (D.D.C. 2025) ......................................................... 10

*New York v. Trump*,
  769 F. Supp. 3d 119 (D.R.I. 2025) ........................................................... 9

*Pharm. Rsch. & Mfrs. of Am. v. U.S. Dep't of Health & Human Servs.*,
  138 F. Supp. 3d 31 (D.D.C. 2015) ......................................................... 10

*\*RFE/RL, Inc. v. Lake*,
  No. 1:25-CV-799-RCL, 2025 WL 1232863 (D.D.C. Apr. 29, 2025).................... 9

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
  578 U.S. 590 (2016).............................................................................. 9

*\*United States ex rel. Accardi v. Shaughnessy*,
  347 U.S. 260 (1954).............................................................................. 8

*VanderMolen v. Stetson*,
  571 F.2d 617 (D.C. Cir. 1977) ................................................................. 8

*\*Widakuswara v. Lake*,
  No. 1:25-CV-1015-RCL, 2025 WL 1166400 (D.D.C. Apr. 22, 2025).................. 9

**Statutes**

*5 U.S.C. § 706(2) ................................................................................................... 2

5 U.S.C. § 706(2)(A) ................................................................................. 2, 8, 12, 16

5 U.S.C. § 706(2)(C) ..................................................................................... 2, 8, 16

5 U.S.C. § 706(2)(D) ................................................................................. 2, 8, 12, 16

42 U.S.C. § 2000d ..................................................................................................... 12

*42 U.S.C. § 2000d-1 ..................................................................................... 2, 13, 15

42 U.S.C. § 300(a) ..................................................................................................... 3

**Regulations**

42 C.F.R. § 59.5(a)(4) ............................................................................................. 12

*45 C.F.R. § 75 *et seq.* ........................................................................................... 10
  45 C.F.R. § 75.100(a)(1) ....................................................................................... 10
  45 C.F.R. § 75.210(b)(1)(ii) ..................................................................................... 4
  45 C.F.R. § 75.371 ................................................................................. 1, 10, 11, 12
  45 C.F.R. § 75.371(a) ....................................................................................... 1, 11
  45 C.F.R. § 75.371(a)-(f) .......................................................................................... 11
  45 C.F.R. § 75.374(a) ............................................................................................. 12

*45 C.F.R. § 80 *et seq.* ........................................................................................... 13
  45 C.F.R. § 80.2 ..................................................................................................... 13
  45 C.F.R. § 80.6(a) ................................................................................................. 13
  45 C.F.R. § 80.8 ....................................................................................................... 2
  45 C.F.R. § 80.8(a) ................................................................................................. 14
  45 C.F.R. § 80.8(c) ................................................................................................. 15
  45 C.F.R. § 80.8(c)(1) ....................................................................................... 14, 15
  45 C.F.R. § 80.8(c)(2) ....................................................................................... 14, 15
  45 C.F.R. § 80.8(c)(3) ............................................................................................. 15
  45 C.F.R. § 80.8(d) ................................................................................................. 15
  45 C.F.R. § 80.8(d)(1) ....................................................................................... 14, 15
  45 C.F.R. § 80.8(d)(2) ....................................................................................... 14, 15
  45 C.F.R. § 80.8(d)(3) ....................................................................................... 14, 15
  45 C.F.R. § 80.9 ..................................................................................................... 14

**Other Authorities**

Jessica Swafford Marcella, Deputy Assistant Sec'y for Population Affs., Off. of Population
  Affs., *Notice of Funding Opportunity: Title X Family Planning Services Grants* (2021),

https://static1.squarespace.com/static/62991439185270517b7b57fb/t/63e5566f1807b3
08a7f9e5ad/1696613921087/NOFO+2022.pdf ................................................................. 3, 4

Phil Killewald et al., U.S. Dep't of Health & Hum. Servs., Off. of Population Affs., *Family
Planning Annual Report: 2023 National Summary* (2024),
https://opa.hhs.gov/sites/default/files/2025-05/2023-FPAR-National-Summary-Report.pdf..... 2

## INTRODUCTION

On March 31, 2025, Defendants sent letters to sixteen Title X family planning grantees—fifteen of which are currently members of Plaintiff National Family Planning and Reproductive Health Association ("NFPRHA")—informing the grantees that Defendants were withholding $65.8 million in grant funds while they investigated "possible" violations of the grant terms and conditions, including violations of Title VI of the Civil Rights Act, which prohibits discrimination based on race, color, or national origin (the "March 31 Letters" or "Letters").[1]  In support of their action, Defendants cited a single regulation: 45 C.F.R. § 75.371(a).  But that regulation permits the Department of Health and Human Services ("HHS" or "the Agency") to withhold funds *only* if it has already *determined* that a grantee has failed to comply with "Federal statutes, regulations, or the terms and conditions of a Federal award" and, even then, only *after* HHS has also "determine[d] that noncompliance cannot be remedied by imposing additional conditions."  45 C.F.R. § 75.371.  The March 31 Letters make clear that HHS had not in fact determined that any grantee was actually violating (or had violated) any grant term or condition or any law prior to withholding funds.  Nor had HHS determined that any alleged noncompliance could not be remedied by imposing additional conditions.  The Agency's action therefore violated its own regulation.

The Agency's action also violated the applicable laws and regulations governing how HHS must effectuate grantees' compliance with Title VI of the Civil Rights Act.  Those requirements

---

[1] When this case was initially filed, and at the time of the filing of Plaintiff's Response to Defendants' Pre-Motion Notice, fourteen of the sixteen Title X grantees that had their funding withheld were NFPRHA members.  *See* Compl. ECF No. 1; Pl.'s Resp. to Defs' Pre-Motion Notice, ECF No. 20.  However, during the week of July 21, 2025, one additional affected grantee—Planned Parenthood of Greater Ohio—became a member of NFPRHA.  Accordingly, as of the date of this filing, fifteen of the sixteen Title X grantees that had funding initially withheld on March 31 are NFPRHA members and, as discussed *infra*, as of the date of this filing, eight of NFPRHA's members continue to have their grants withheld.  *See* Pl.'s Statement of Material Facts Not in Dispute ("SOMF") ¶¶ 15–16, 48–49; Declaration of Clare Coleman ¶¶ 22, n.2, 34–35 (hereinafter "Coleman Decl."), attached hereto as Exhibit 1.

make clear that HHS may not withhold federal funds from a grantee for an alleged Title VI violation in an HHS program unless it has first determined that an actual violation of Title VI has occurred; provided notice of the violation to the grantee; and determined that compliance cannot be secured through voluntary means. *See generally* 42 U.S.C. § 2000d-1; 45 C.F.R. § 80.8. Defendants failed to follow any of these requirements.

Accordingly, for the reasons discussed below, Plaintiff is entitled to summary judgment on its First, Second, and Third Causes of Action, namely, that Defendants acted (1) contrary to law under 5 U.S.C. § 706(2)(A); (2) in excess of their statutory authority under 5 U.S.C. § 706(2)(C); and (3) without observance of the procedure required by law under 5 U.S.C. § 706(2)(D).[2] Plaintiff therefore respectfully requests that this Court grant its motion for summary judgment, declare that Defendants violated the law by withholding funds from Plaintiff's members pursuant to the March 31, 2025 Letters, and vacate and set aside the Letters and the withholding of funds they announced. 5 U.S.C. § 706(2).

## BACKGROUND:  THE TITLE X PROGRAM

Title X is the nation's only dedicated federally funded family planning program that provides access to effective contraceptive methods, cancer screenings, testing and treatment for sexually transmitted infections, and other preventive services. *See* Coleman Decl. ¶ 4. Title X became law as part of the "Family Planning Services and Population Research Act of 1970." Pub. L. No. 91-572, 84 Stat. 1504 (1970). Title X patients are disproportionately young people, people of color, and people with low incomes, with the majority having incomes at or below the federal poverty level. *See* Coleman Decl. ¶ 6; *see also* Phil Killewald et al., U.S. Dep't of Health & Hum.

---

[2] Plaintiff reserves the right to move on its arbitrary and capricious claim after Defendants produce the administrative record. Plaintiff also reserves the right to move on its *ultra vires* claim should its claims under the APA be dismissed or should this motion for summary judgment be denied.

Servs., Off. of Population Affs., *Family Planning Annual Report: 2023 National Summary* at 12–13 (2024) ("2023 FPAR"), available at https://opa.hhs.gov/sites/default/files/2025-05/2023-FPAR-National-Summary-Report.pdf.

Section 1001 of Title X authorizes the Secretary of HHS to fund "public or nonprofit private entities to assist in the establishment and operation of voluntary family planning projects which shall offer a broad range of acceptable and effective family planning methods and services." 42 U.S.C. § 300(a). These Title X grants support Title X "projects" in geographically defined locations. Coleman Decl. ¶ 8. Within each Title X project, there are typically three levels: (1) the grantee entity, (2) subrecipient organizations, and (3) individual health centers, or service sites, operated either directly by the grantee or run by subrecipients. *Id.* Title X grantees may receive one grant for a Title X project that serves one state; one grant for a Title X project that serves multiple states; or multiple grants for Title X projects that serve multiple states. *Id.* ¶ 9. Some states may also be served by multiple Title X projects operated by different Title X grantees. *Id.*

For the current competitive Title X grant award, HHS (through the Office of Population Affairs or "OPA") announced the availability of grant funds for Title X services through a Notice of Funding Opportunity ("NOFO") in late 2021, with grants to begin in April 2022. *Id.* ¶ 14 (citing Jessica Swafford Marcella, Deputy Assistant Sec'y for Population Affs., Off. of Population Affs., *Notice of Funding Opportunity: Title X Family Planning Services Grants* (2021) (hereinafter "NOFO"), https://static1.squarespace.com/static/62991439185270517b7b57fb/t/63e5566f1807b308a7f9e5ad/1696613921087/NOFO+2022.pdf). Funds under the fiscal year (FY) 2022 competitive NOFO were to be awarded for a period of performance of up to five years, to be funded in annual increments, called budget periods. *Id.* ¶ 15. Successful applicants awarded grants in FY 2022 were issued initial Notices of Award ("NOAs"), informing them of their selection as

Title X grantees, award amounts, the project period of performance and initial budget period dates, and containing standard and special terms and conditions, reporting requirements, and contact information for relevant officials at HHS. *Id.* ¶ 16. Pursuant to HHS regulations governing grant funding, the NOAs include a provision requiring compliance with "statutory, executive order, other Presidential directive, or regulatory requirements." 45 C.F.R. § 75.210(b)(1)(ii).

To obtain funds for subsequent budget periods of the approved period of performance, grantees are required to submit noncompeting continuation grant applications that include "a progress report for the current budget year, and work plan, budget and budget justification for the upcoming year." Coleman Decl. ¶ 17 (quoting NOFO at 47). When these continuation grant applications are approved, grantees are issued a new NOA for that budget period, often within days of the budget period start date. *Id.* ¶ 18.

## <u>LOCAL RULE 7(h)(2) STATEMENT OF UNDISPUTED FACTS</u>

Title X grantees' non-competing continuation applications for funding for FY 2025 were due by January 6, 2025, for the budget period beginning April 1, 2025. SOMF ¶ 10. Fifty-eight of NFPRHA's members submitted non-competing continuation applications for FY 2025 Title X funding by the January 6, 2025, deadline. *Id.* ¶ 11. Non-competing continuation applications for Title X funding are virtually always granted. *Id.* ¶ 12. NFPRHA member grantees that submitted non-competing continuation grant application for FY 2025 expected to receive new NOAs approving their continuation grant applications in late March of 2025. *Id.* ¶ 13. But instead of receiving their continuation grants, on March 31, 2025, fifteen of NFPRHA's Title X-grantee members (the "Affected Members") received letters from OPA Deputy Director Amy Margolis providing notice that their grants were being withheld pending investigation into "possible" violations of the grant terms and conditions set forth in their notice of award. *Id.* ¶¶ 14–16, 18.

All of the March 31 Letters received by NFPRHA's Affected Members are substantially similar in substance to the letter received by NFPRHA member Missouri Family Health Council, Inc. ("MFHC"). *Id.* ¶ 17. The Letters state that the withholding of the Affected Members' grant awards was undertaken "pursuant to 45 C.F.R. § 75.371(a)." *Id.* ¶ 19.

The Letters quote the Standard Terms in the NOA, which provides: "You must administer your project in compliance with federal civil rights laws that prohibit discrimination on the basis of race, color, [and] national origin." *Id.* ¶ 20. The Letters inform the Affected Members that a review of public materials posted by the Affected Members "suggests" they may be or are engaged in conduct that violates Title VI and/or Title VII of the Civil Rights Act. *Id.* ¶ 21. To this end, the Letters identify and provide links to one or two public materials posted by the majority of the Affected Members, which, according to the Letters, reflect a "likely violation" of the terms of the Member's grant. *Id.* ¶¶ 22–23. However, the eight Planned Parenthood Affected Members that had grants withheld received a single March 31 Letter, addressed to all of them, which fails to identify or provide links to *any* such "public materials" of five of the eight Planned Parenthood Affected Members. *Id.* ¶¶ 24–25.

The Letters go on to quote the Affected Members' NOAs, which provide: "You must comply with . . . requirements imposed by . . . Executive Orders[.]" *Id.* ¶ 26. The Letters specifically reference EO 14218 §§ 1, 2(i), which, they state, sets forth a policy to remove incentives for illegal immigration by ensuring that taxpayer-funded benefits are not provided to "illegal aliens." *Id.* ¶¶ 27–28. The Letters maintain that they are requesting information to ensure compliance with the requirements of EO 14218. *Id.* ¶ 29.

The Letters state that the Office of the Assistant Secretary for Health ("OASH") "is withholding payments under all captioned awards effective as of the date of this letter." *Id.* ¶ 30.

The Letters explain that the OASH will communicate with the Affected Members to assess the existence and scope of practices that violate civil rights laws and to assess the same or ensure compliance with EO 14218.  *Id*. ¶ 31.  In conclusion, the Letters request a list of documents "to assess compliance with grant terms and conditions, including civil rights laws and EO 14218." *Id*. ¶ 32.

Prior to withholding NFPRHA's Affected Members' Title X grants pursuant to the March 31 Letters, HHS made no actual determination that any of NFPRHA's Affected Members had in fact violated or were in fact violating the terms or conditions of their grants.  *Id*. ¶ 33.  Prior to receipt of the March 31 Letters, NFPRHA's Affected Members had received no notice from HHS indicating that HHS suspected they were out of compliance with any terms or conditions of their grants or that their grants were at risk of being withheld on that basis.  *Id*. ¶¶ 34–35.  Nor was any Affected Member provided any opportunity to voluntarily remedy any suspected violation of the terms or conditions of their grants prior to their funds being withheld pursuant to the March 31 Letters.  *Id*. ¶ 36.  Further, prior to the withholding of NFPRHA's Affected Members' Title X grants pursuant to the March 31 Letters, none of NFPRHA's Affected Members were provided an opportunity for a hearing to contest any alleged failure to comply with the requirements of federal civil rights law, nor was there any express finding made on the record following a hearing that any of NFPRHA's Affected Members actually failed to comply with the requirements of federal civil rights law.  *Id*. ¶¶ 37–38.  Finally, HHS did not file any written reports detailing the circumstances and grounds for withholding funds from any of NFPRHA's Affected Members with any House or Senate committee, nor did HHS wait at least 30 days from the filing of any such reports prior to withholding NFPRHA's Affected Members' funds.  *Id*. ¶¶ 39–40.  Over the course of at least the past fifteen years, no Title X grantee has had their continuation grant withheld pending

investigation into compliance with the terms and conditions of the grant. *Id*. ¶ 41. In fact, over the course of at least the past fifteen years, on the rare occasion that HHS has undertaken an investigation into a Title X grantee's compliance with terms and conditions, HHS has continued to fund the grantee during the pendency of the investigation and has provided the grantee with an opportunity to come into compliance prior to withholding or terminating the provision of funds. *Id*. ¶ 42.

On June 25, 2025, four of Plaintiff's Affected Members received letters from OPA Deputy Director Amy Margolis informing them that the OASH was restoring their previously withheld Title X grants. *Id*. ¶ 43. However, also on June 25, 2025, eleven of Plaintiff's Affected Members received letters informing them that their grant funds were still being withheld based on possible violations of the terms and conditions of their grants and requesting additional information to assess compliance. *Id*. ¶¶ 44–45. Nearly one month later, on July 23, 2025, three more of Plaintiff's Affected Members received letters from OPA Deputy Director Amy Margolis informing them that OASH was also restoring their previously withheld Title X grants. *Id*. ¶ 46. However, the Title X continuation grants of eight of Plaintiff's Affected Members remain withheld to date. *Id*. ¶¶ 47–48.

## **LEGAL STANDARD**

In an APA action, "summary judgment . . . serves as the mechanism for deciding, as a matter of law, whether the agency action is . . . consistent with the APA standard of review." *Grace v. Whitaker*, 344 F. Supp. 3d 96, 120 (D.D.C. 2018) (cleaned up), *affirmed in part and reversed in part on other grounds*, *Grace v. Barr*, 965 F.3d 883 (D.C. Cir. 2020); *see also Beyond Nuclear v. U.S. Dep't of Energy*, 233 F. Supp. 3d 40, 47 (D.D.C. 2017) ("When reviewing motions for summary judgment in a suit seeking review of an agency's actions, the standard under Fed. R. Civ.

P. 56(a) does not apply.").  Pursuant to the APA, a court must set aside any agency action that is, *inter alia*, "not in accordance with law," "in excess of statutory . . . authority," or "without observance of procedure required by law."  5 U.S.C. § 706(2)(A); *id*. § 706(2)(C); *id*. § 706(2)(D).

## ARGUMENT

The APA provides that courts "shall . . . hold unlawful and set aside" final agency action that is "not in accordance with the law," "in excess of statutory . . . authority," or is "without observance of procedure required by law."  5 U.S.C. § 706(2)(A); *id*. § 706(2)(C); *id*. § 706(2)(D). A plaintiff is entitled to relief under the APA when an agency acts contrary to or in violation of a federal statute, and/or when it acts contrary to or in violation of the Agency's own "existing valid regulations," *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *Battle v. F.A.A.*, 393 F.3d 1330, 1336 (D.C. Cir. 2005) ("*Accardi* has come to stand for the proposition that agencies may not violate their own rules and regulations to the prejudice of others."); *VanderMolen v. Stetson*, 571 F.2d 617, 624 (D.C. Cir. 1977) ("[a]ctions by an agency of the executive branch in violation of its own regulations are illegal and void").  As discussed below, because Defendants have flouted regulatory and statutory requirements by withholding Title X grants pursuant to the March 31 Letters, Plaintiff is entitled to relief under the APA.

### I.    Defendants' Withholding of Title X Funds Constitutes Final Agency Action for the Purposes of the APA.

Plaintiff is entitled to challenge the withholding of Title X funds pursuant to the March 31 Letters under the APA because it constitutes final agency action.  An agency's action is final within the meaning of the APA—and thus reviewable by a court—when: (1) "the action . . . mark[s] the consummation of the agency's decisionmaking process," and (2) when the action determines "rights or obligations" or when "legal consequences will flow" from the action.  *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (cleaned up).  Courts "are to apply the finality requirement in a

'flexible' and 'pragmatic' way." *Ciba-Geigy Corp. v. U.S.E.P.A.*, 801 F.2d 430, 435 (D.C. Cir. 1986); *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 599 (2016) (noting the "'pragmatic' approach [the Supreme Court] ha[s] long taken to finality"). The withholding of continuation grants pursuant to the March 31 Letters constitutes final agency action under this test.

*First*, Defendants' issuance of the March 31 Letters to the Affected Members marks the "consummation" of the agency's decision-making process as to whether to withhold continuation grants from certain grantees, and the specific process or mechanism by which to do so—namely, the cart-before-the-horse process of withholding the grants prior to any determination of actual non-compliance, or the provision of any opportunity to come into compliance. *See* SOMF ¶¶ 14–42; *see also Widakuswara v. Lake*, No. 1:25-CV-1015-RCL, 2025 WL 1166400, at *12 (D.D.C. Apr. 22, 2025) (finding final agency action where the "agency has made decisions, communicated them to their . . . . grantees, and thereby altered their rights and obligations"); *New York v. Trump*, 769 F. Supp. 3d 119, 136 (D.R.I. 2025), *enforced*, No. 25-CV-39-JJM-PAS, 2025 WL 1009025 (D.R.I. Apr. 4, 2025), *reconsideration denied*, No. 1:25-CV-39-JJM-PAS, 2025 WL 1098966 (D.R.I. Apr. 14, 2025) (finding that agency's indefinite funding pauses marked "consummation of each agency's decisionmaking process to comply with the President's executive order, the OBM [Directive], or both").

*Second*, Defendants' action is "one by which rights or obligations have been determined, or from which legal consequences will flow," *Bennett*, 520 U.S. at 177–78 (cleaned up), because it has resulted in the withholding of grant funding from NFPRHA's Affected Members that, in the usual course of events, would have been awarded at the end of March. SOMF ¶¶ 11–16, 41–42, 47–48; *RFE/RL, Inc. v. Lake*, No. 1:25-CV-799-RCL, 2025 WL 1232863, at *6 (D.D.C. Apr. 29, 2025) (finding agency action "constitutes a determination of 'rights or obligations'" where "it

results in the withholding of [plaintiff's] congressionally appropriated funds for the month of April—an amount that, in the usual course of events, would have been disbursed at the end of March"); *Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, 763 F. Supp. 3d 36, 54 (D.D.C. 2025) (finding Office of Management and Budget memorandum directing federal agencies to temporarily pause disbursement of federal financial assistance and to freeze all such funds "immediately produced legal consequences across the entire federal funding system"); *see also CSI Aviation Servs., Inc. v. U.S. Dep't of Transp.*, 637 F.3d 408, 412 (D.C. Cir. 2011) (finding that agency action was final where it imposed "immediate and significant practical burden" on regulated party); *Pharm. Rsch. & Mfrs. of Am. v. U.S. Dep't of Health & Human Servs.*, 138 F. Supp. 3d 31, 46 (D.D.C. 2015) (infliction of "acute burden" with "real consequences" supported existence of final agency action).  Accordingly, Defendants' withholding of funds pursuant the March 31 Letters constitutes final agency action that is reviewable under the APA.

## II.    Defendants Have Violated Governing Statutes and Regulations.

### A.  Defendants Violated Their Own Regulations Related to Grant Awards.

The sole basis for Defendants' withholding of the Affected Members' Title X grant awards cited in the March 31 Letters—45 C.F.R. § 75.371—does not permit the action Defendants undertook here.   Section 75.371 is one of the regulations applicable to all HHS grant awards.  *See* 45 C.F.R. pt. 75.   These regulations "establish[] uniform administrative requirements, cost principles, and audit requirements for Federal awards to non-Federal entities."  *See* 45 C.F.R. § 75.100(a)(1).   As relevant here, these regulations contain rules governing "[r]emedies for noncompliance."  *Id.* § 75.371.  Specifically, the relevant provision provides,

> If a non-Federal entity fails to comply with Federal statutes, regulations, or the terms and conditions of a Federal award, the HHS awarding agency or pass-through entity may impose additional conditions . . . . If the HHS awarding agency or pass-through entity

> determines that noncompliance cannot be remedied by imposing additional conditions, the HHS awarding agency or pass-through entity may take one or more of the following actions, as appropriate in the circumstances . . .

*Id.*

The "actions" referenced in that provision include: (1) temporarily withholding cash payments pending correction of the deficiency by the non-Federal entity or more severe enforcement action by the HHS awarding agency; (2) disallowing, *i.e.*, denying the use of funds for, all or part of the cost of the activity or action not in compliance; (3) wholly or partly suspending or terminating the award; (4) initiating suspension or debarment proceedings as authorized by regulation; (5) withholding further Federal awards for the project or program; (6) taking other remedies that may be legally available. *See id.* § 75.371(a)-(f).

HHS failed to comply with the foregoing requirements. SOMF ¶¶ 14–36. First, although the Agency cited § 75.371 as its only justification for withholding the Affected Members' awards, *see id.* ¶ 19, it failed to adhere to the plain text of that provision: withholding of grant money is a permitted remedy only "*[i]f* a non-Federal entity *fails* to comply with Federal statutes, regulations, or the terms and conditions of a Federal award." 45 C.F.R. § 75.371 (emphasis added). The March 31 Letters make clear that the Agency has not yet actually determined whether any Affected Member has in fact "fail[ed] to comply" with anything. SOMF ¶¶ 14–33. Indeed, the Letters on their face demonstrate that the Agency has not yet made any such determination, as they note that the grant awards are being withheld based on "*possible*"—not *actual*—violations. *Id.* ¶ 18; *see also, e.g.*, *id.* ¶ 21 (the Letters state that the Affected Members' materials "*suggests*" they may be violating federal civil rights law); *id.* ¶ 23 (the Letters state that the Affected Members' materials reflect a "*likely*" violation); *id.* ¶ 32 (the Letters request information to "*assess*" compliance).

11

Second, even after the Agency has decided that a grantee has failed to comply, the withholding of funds under § 75.371 is permitted only "*[i]f* the HHS awarding agency . . . determines that noncompliance cannot be remedied by imposing additional conditions." 45 C.F.R. § 75.371 (emphasis added). Because the Letters *do not* conclude that the Affected Members have, in fact, failed to comply with anything, *see* SOMF ¶¶ 14–33, HHS could not possibly have "determine[d]" that withholding of funds was the only means to remedy a failure to comply. And it certainly did not provide the Affected Members with any opportunity to "remed[y]" a finding of non-compliance by implementing "additional conditions" prior to withholding their funds. *Id.* ¶¶ 34–36. Defendants have therefore acted "not in accordance with law," 5 U.S.C. § 706(2)(A), and "without observance of procedure required by law," 5 U.S.C. § 706(2)(D).

### B. Defendants Violated the Statutory and Regulatory Requirements for Enforcing Title VI in HHS-Funded Programs.

Title X grantees are required to comply with federal anti-discrimination laws, as set out in both the Standard Terms in their NOAs and applicable Title X regulations. *See, e.g.*, 42 C.F.R. § 59.5(a)(4). That obligation includes compliance with Title VI of the Civil Rights Act, which, in relevant part, provides, "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. The March 31 Letters state HHS's belief that the Affected Members may have possibly committed unspecified violations of Title VI and that HHS's decision to withhold funds is premised, at least in part, on this speculative noncompliance. SOMF ¶¶ 18, 20–21, 30–31. However, HHS regulations provide that the Agency "must comply with any requirements for hearings, appeals or other administrative proceedings to which the non-Federal entity is entitled under any statute or regulation applicable to the action involved." 45 C.F.R. § 75.374(a). In other

words, where, as here, the Agency is suggesting that a grantee has failed to comply with a specific federal statute or regulation, HHS must adhere to any procedural requirements applicable under those provisions of law. The Agency failed to do so.

To start, the Title VI statute mandates that, before HHS may enforce Title VI through the "termination of or refusal to grant or to continue assistance under" a grant program, there must be "an express finding on the record, after opportunity for hearing, of a failure to comply with such requirement," and HHS must "file with the committees of the House and Senate having legislative jurisdiction over the program or activity involved a full written report of the circumstances and grounds for such action" at least thirty days prior to such action taking effect. 42 U.S.C. § 2000d-1. In addition, while also permitting HHS to effectuate compliance "by any other means authorized by law," Congress *prohibited* the Agency from taking "such action . . . until the . . . [A]gency . . . has advised the appropriate person or persons of the failure to comply with the requirement and has determined that compliance cannot be secured by voluntary means." *Id.*

Moreover, in response to Congress's directive that HHS effectuate Title VI by issuing regulations intended to ensure compliance with the statute by grantees while they carry out HHS-funded activities, *see* 42 U.S.C. § 2000d-1, HHS promulgated a set of regulations entitled "Nondiscrimination Under Programs Receiving Federal Assistance Through the Department of Health and Human Services Effectuation of Title VI of the Civil Rights Act of 1964." *See* 45 C.F.R. pt. 80 *et seq.* These regulations "appl[y] to any program to which Federal financial assistance is authorized to be extended to a recipient under a law administered by" HHS. 45 C.F.R. § 80.2. They provide that the Agency "shall to the fullest extent practicable seek the cooperation of recipients in obtaining compliance with this part and shall provide assistance and guidance to recipients to help them comply voluntarily with this part." *Id.* § 80.6(a). Only "[i]f there appears

13

to be a failure or threatened failure to comply with this regulation, *and* if the noncompliance or threatened noncompliance cannot be corrected by informal means," *id.* § 80.8(a) (emphasis added), may HHS effectuate compliance "by the suspension or termination of or refusal to grant or to continue Federal financial assistance or by any other means authorized by law." *Id.*

The regulations instruct that no order "suspending, terminating or refusing to grant or continue Federal financial assistance shall become effective until": (1) the Agency "has advised the applicant or recipient of his failure to comply and has determined that compliance cannot be secured by voluntary means"; (2) "there has been an express finding on the record, after opportunity for hearing, of a failure by the applicant or recipient to comply with a requirement imposed by or pursuant to this part"; and (3) "the expiration of 30 days after the Secretary has filed with the committee of the House and the committee of the Senate having legislative jurisdiction over the program involved, a full written report of the circumstances and the grounds for such action." *Id.* § 80.8(c)(1)-(3). HHS's regulations provide additional procedures for the hearings required by 45 C.F.R. § 80.8(c)(2), *see id.* § 80.9, as well as for decisions by hearing examiners, *see id.* § 80.10(a); the regulations also provide for judicial review of such decisions, *see id.* § 80.11.

The regulations also permit HHS to employ "any other means authorized by law" to effectuate compliance with Title VI, *id.* § 80.8(a), provided that the Agency take "[n]o action to effect compliance by any other means authorized by law . . . until": (1) the Agency "has determined that compliance cannot be secured by voluntary means"; (2) the grantee "has been notified of its failure to comply and of the action to be taken to effect compliance"; and (3) "the expiration of at least 10 days from the mailing of such notice," during which time, "additional efforts shall be made to persuade [the grantee] to comply with the regulation and to take such corrective action as may be appropriate." *See id.* § 80.8(d)(1)-(3).

14

The Agency failed to adhere to the process that Congress—and HHS itself—has established for withholding funds based on alleged Title VI violations.  To the extent the Agency's action is viewed as one of refusing to "continue assistance" under Title X, it was required by statute and regulation to (1) determine that the grantee has actually failed to comply, *see, e.g.*, 45 C.F.R. § 80.8(c); 42 U.S.C. § 2000d-1; (2) provide notice to the grantee of the determination that it has failed to comply, 45 C.F.R. § 80.8(c)(1); (3) determine that compliance could not be secured by voluntary means, *id.*; (4) provide an "opportunity for hearing," *id.* § 80.8(c)(2); 42 U.S.C. § 2000d-1; (5) make an "express finding on the record"—at the conclusion of that hearing—that the grantee has in fact failed to comply with the requirement, *id.*; (6) file with the relevant House and Senate committees a full written report of the circumstances and grounds for the action, 45 C.F.R. § 80.8(c)(3); 42 U.S.C. § 2000d-1; and (7) wait at least 30 days after the filing of the report before letting any order refusing to continue assistance take effect, *id.*  The Agency did none of this before withholding the grant funds.  SOMF ¶¶ 14–40.

Moreover, to the extent the Agency's action is instead construed as using "other means authorized by law" for effecting compliance, the Agency was required by law and regulation to (1) determine that the grantee has actually failed to comply, *see, e.g.*, 45 C.F.R. § 80.8(d); 42 U.S.C. § 2000d-1; (2) determine that compliance cannot be secured by voluntary means, 45 C.F.R. § 80.8(d)(1); 42 U.S.C. § 2000d-1; (3) provide notice to the grantee of the determination of non-compliance and of the action to be taken to effect compliance, 45 C.F.R. § 80.8(d)(2); 42 U.S.C. § 2000d-1; and (4) wait at least 10 days from the mailing of that notice, during which time the Agency must engage in additional efforts to persuade the grantee to comply and take any appropriate corrective action, 45 C.F.R. § 80.8(d)(3).  The Agency did none of this before withholding the grant funds.  SOMF ¶¶ 14–40.  Accordingly, HHS acted contrary to the Title VI

statute and regulations, 5 U.S.C. § 706(2)(A); acted without observance of procedure required by law, 5 U.S.C. § 706(2)(D); and acted in excess of the Title VI statutory authority, 5 U.S.C. § 706(2)(C).

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court grant its motion for partial summary judgment, declare that Defendants violated the law in the manner discussed above, and vacate and set aside the Letters and the withholding of funds they announced.

July 28, 2025,                              Respectfully submitted,

*/s/ Brigitte Amiri*
Brigitte Amiri
Meagan Burrows
Ryan Mendias
Nora Ellmann
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
T: (212) 549-2500
bamiri@aclu.org
mburrows@aclu.org
rmendias@aclu.org
nellmann@aclu.org

Arthur B. Spitzer (D.C. Bar No. 235960)
Aditi Shah (D.C. Bar No. 90033136)
American Civil Liberties Union
  of the District of Columbia
529 14th Street, NW, Suite 722
Washington, D.C. 20045
T: (202) 601-4266
aspitzer@acludc.org
ashah@acludc.org

Robin Summers (D.C. Bar No. 219473)
National Family Planning & Reproductive Health
Association
1025 Vermont Ave. NW, Suite 800

Washington, D.C. 20005
T: (202) 293-3114
rsummers@nfprha.org

*Attorneys for Plaintiff*